ORIGINAL

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FILED
MAY 23 2006
U.S. COURT OF FEDERAL CLAIMS

Hoh River Timber Company, a Washington corporation,

Plaintiff,

v.

United States of America, through the Department of Agriculture, United States Forest Service,

Defendant.

No. 06-418 C

## COMPLAINT

COMES NOW the Plaintiff Hoh River Timber Company ("Hoh River"), through its undersigned counsel, and alleges as follows:

## JURISDICTION

1. The Court has jurisdiction of this action under 28 USCA § 1491(a)(2) as an action brought on a decision of a contracting officer issued under Section 518 of the Contract Disputes Act, 41 USCA § 605. As set forth in paragraphs 4 and 45 below, the particular contracting officer's final decision was timely filed within one year of that decision, 41 USCA § 605.

## PARTIES

2. Plaintiff Hoh River is a corporation organized and existing under the laws of the State of Washington.

3. Defendant United States, acting through the Department of Agriculture, United States Forest Service ("USFS"), solicited bids, and on June 14, 1993 entered into a contract with Hoh River for sale of transfer within the Gifford Pinchot National Forest under the Polk M

Contract (the "Contract"), No. 078767 (Exhibit A, Excerpts of Contract). Defendant United States bears ultimate responsibility for the actions of the USFS under and in connection with the Contract.

## STATEMENT OF THE CASE

4. This action arises out of the Contracting Officer's Findings and Decision dated February 24, 2006 declaring Hoh River liable to the United States for damages for failure to complete, remove, and pay for the NSH-Polk M Timber Sale ("Sale) as required in the Contract.

5. The Sale was advertised on April 28, 1993. A sale volume of 4,240 thousand board feet ("MBF") of Douglas-fir and other species was advertised for $272.98 per MBF. The bid opening, followed by oral bidding, was held on May 27, 1993. Hoh River was the successful high bidder at a bid rate of $568.00 per MBF. The Sale was awarded to Hoh River on June 14, 1993.

6. The Contract was modified on January 26, 1994 to divide Payment Unit 1 into 1a and 1b and Payment Unit 13 into 13a and 13b.

7. The Contract was modified on May 16, 1994 to add provision CT4.228, Performance Bond as Security for Felled Timber.

8. On November 14, 1994, the road completion date was extended to November 30, 1995.

9. The Contract was modified on February 24, 1995 and March 30, 1995 revising CT6.404# and CT2.35# (Option 1), for payment unit division, and revising the sale area map.

10. On April 18, 1995, the base index rate was adjusted to $468.57.

11. On October 2, 1995, the Market Related Contract Term Addition was granted to extend sale term date to August 30, 1999 and the periodic payment schedule was revised.

12. On February 7, 1996, the Contract was modified to delete CT8.3 (1/86) and add CT8.3 (1/93), and an increase in Hoh River's credit limit by $20,000.

13. On December 12, 1996, a Contract term adjustment was granted to July 26, 2000, and the periodic payment schedule was revised.

14. The periodic payment schedule was changed on February 4, 1997.

15. On February 28, 1997, the Contract was modified to change Payment Unit 4 to Payment Unit 4M, and Sales Area Map was again revised, reducing acres and volume quantity.

16. In March 1997, Hoh River ceased activity on the Sale, having removed 2,310 MBF. The volume remaining was 1,660 MBF.

17. On January 13, 1998, a Contract term adjustment was granted to July 1, 2001 and the periodic payment schedule was revised.

18. The Contract was modified on July 6, 1998 to replace CT8.212# to add a new provision that changed index name and number.

19. On November 13, 1998, a Market Related Contract Term Addition was granted to extend sale term date to July 1, 2002, and revised periodic payment schedule.

20. On April 20, 1999, the Sale term date was extended to October 31, 2002, and periodic payment schedule was revised.

21. On October 6, 1999, the Contract was modified to divide payment Unit 10 into 10a and 10b and payment Unit 11 into 11a and 11b, separating tractor yarding portions.

## MODIFICATION OF CONTRACT FOR PROTECTION OF NORTHERN SPOTTED OWL

22. On February 11, 2000, the Contract was modified to provide protection for the northern spotted owl by adding an operating restriction to CT6.315#. Operations Conditions were added to Payment Unit 19 specifying that all falling must occur between August 31 and

February 29 after March 1, 1999, to prevent disruption to nesting spotted owls and direct impact to dispersing juveniles through cutting of spotted owl habitat. Operations Conditions were added to Payment Unites 10, 11, 13B and 19 specifying that all noise making operations must occur between July 1 and February 29 after March 1, 1999 to prevent disruption to nesting spotted owls and direct impact to dispersing juveniles due to noise.

23. On February 11, 2000, the AT5a base index was replaced.

## MODIFICATION OF CONTRACT FOR STREAM BUFFERS TO COMPLY WITH ENDANGERED SPECIES ACT

24. On December 6, 2000, the Contract was further modified to add stream buffers and reduce volume quantities stated in AT2 and AT5c.

25. On January 31, 2001, the Contract term was extended to March 1, 2003 and periodic payment schedule was revised.

## REQUEST FOR RESCISSION

26. On February 6, 2001, Hoh River requested that the USFS rescind the NSH-Polk M Timber Sale because of its concern about complying with the Endangered Species Act and the potential for more delay and uncertainty with regard to the Sale.

27. On March 15, 2001, the USFS denied Hoh River's request to rescind the NSH-Polk M Timber Sale.

## CONTRACT TERM ADJUSTED BEYOND 10 YEARS

28. On July 24, 2001 the USFS adjusted the Contract term to September 16, 2004. The tenth anniversary of the June 14, 1993 timber sale was June 14, 2003, and September 16, 2004 was a date beyond ten years from the date of the award.

## REQUEST FOR CANCELLATION OF SALE

29. On July 15, 2003 Hoh River requested that the USFS cancel the NSH-Polk M Timber Sale because of the restrictions placed on the Sale to protect species listed as threatened or endangered under the ESA, the deterioration of the Sale resulting in many unmarked snags or danger trees on the remaining units making the Sale non-compliant with OSHA regulations, the significant confusion over how the Sale is laid out and the need to have it evaluated and remarked for consistency and clarity, the fact that the 10-year anniversary of the Sale had passed, and concern that the Sale contains many evident pockets of root fungus affecting Douglas fir that likely are more widespread than when the NEPA analysis and prescription for the Sale were formulated.

30. On August 26, 2003, the contracting officer denied Hoh River's request to cancel the NSH-Polk M Timber Sale.

31. On November 12, 2003, Hoh River made a periodic payment in amount of $59,791.26.

32. On June 28, 2004, Hoh River informed the USFS that they were interviewing potential contractors to complete the Sale.

33. On July 20, 2004, the contracting officer informed Hoh River that an additional contract term adjustment was available if requested and that the USFS stood ready to assist Hoh River in completion of the sale.

34. In August 2004 Hoh River submitted an operating plan stating intent to complete the Sale.

35. On September 8, 2004, the USFS granted a Contract term adjustment to July 30, 2005.

36. On April 29, 2005, Contracting Officer Frederick Dorn ("CO Dorn") informed Hoh River of pending expiration date of NSH-Polk M Timber Sale and qualifying conditions for extension.

37. On June 29, 2005, Hoh River's legal counsel, Barbara Craig of Stoel Rives LLP, ("Attorney Craig") sent a letter to Valerie Black, Office of General Counsel, U.S. Department of Agriculture, advising Ms. Black that Hoh River could not proceed without re-initiation of consultation for the Sale under the Endangered Species Act (the "ESA") and requesting an extension of the sale termination date pending resolution of the issue.

38. On July 14, 2005, CO Dorn informed Hoh River about the pending expiration date, that there were no other qualifying reasons for extension, and the sale would default in an uncompleted condition by July 30, 2005.

39. On July 19, 2005, attorney Craig sent a letter to Marc Whisler of the U.S. Fish & Wildlife Service ("FWS") requesting that the FWS reinitiate ESA section 7 consultation on the effects of the Sale on listed species.

40. On July 27, 2005, attorney Craig sent a letter to Linda Goodman, Regional Forester, Region 6 ("Regional Forester Goodman"), anticipating that the USFS would reinitiate consultation, and requesting that the USFS designate Hoh River as the USFS's non-federal representative in the ESA section 7 consultation.

41. On July 28, 2005, Ken Berg, FWS, sent a letter to Claire Lavendel, Gifford Pinchot ("CP Supervisor Lavendel") Forest Supervisor, requesting that if the Sale has been changed so that it is not consistent with the conditions previously assumed, the USFS reinitiate consultation.

42. As of July 30, 2005, the Sale remained in an uncompleted condition with volume remaining.

43. On August 9, 2005, Regional Forester Goodman responded to attorney Craig's July 27, 2005 letter, Regional Forester Goodman opined that there were no actions on the part of the USFS preventing Hoh River from completing its obligations under the Contract. Regional Forester Goodman further declared that the Sale had now expired in an uncompleted condition and that the Contracting Officer would proceed with processing any damages due.

44. On August 11, 2005, CP Supervisor Lavendel sent a letter to FWS's Ken Berg indicating that the Forest Service has determined that re-initiation of consultation on the Sale was not required under the ESA.

45. On February 24, 2006, CO Dorn issued findings and a final decision (Exhibit B) declaring Hoh River liable to the United States for damages for failure to complete, remove, and pay for the Sale as required in the Contract.

**COUNT I**

**(Endangered Species Act)**

46. Plaintiff incorporates paragraphs 1 through 45 of this Complaint as if fully stated herein.

47. At the time the Sale was listed Endangered Species Act ("ESA") listed species were not a concern, Contract CT 6.24.

48. Since being awarded to Hoh River in 1993, the Polk M sale has, however, been the subject of Endangered Special Act (the "ESA") Section 7 consultations between the Forest Service and the United States Fish and Wildlife Service ("FWS"). August 2000 letter from the

Dept. of Interior to Ms. Lavendel, Forest Supervisor Gifford Pinchot National Forest (re-initiation on original consultation 1991).

49. The Forest Service consulted with FWS concerning the effects of the sale on northern spotted owl in July 1991 and more recently, bull trout in August 2000. The bull trout consultation was a reinitiation of an earlier formal consultation for the 318 Timber Sale Program (318 Timber Sales Biological Opinion (FWS 1-7-91 - F-0031) to consider the effect of the sale on the subsequently listed bull trout.

50. The bull trout consultation concluded informally with a "not likely to adversely affect" determination based on certain assumptions made by the FWS concerning the Sale, and certain conditions the FWS imposed to avoid impacts to bull trout. Most notable was a condition that streams in the Sale area would be buffered and no new roads would be built to complete the Sale.

51. However, changes to the Sale layout since it was first awarded would require Hoh River to violate the FWS' conditions in the consultation under the ESA.

52. Completing the sale circumstances consequently would not be consistent with the conditions on which the findings of the bull trout informal consultation were based.

53. The Sale, as modified, violates the conditions on which the FWS based its findings in the prior bull trout informal consultation. Proceeding with the Sale in violation of the ESA would constitute a breach of the Sale contract (CT9.3).

54. Proceeding with the Sale also would subject Hoh River to potential liability under section 9 of the ESA. 16 USC § 1538. Section 9 prohibits the "take" of a listed species without a permit. *Id.* The term "take" includes to "harm" the species, which the FWS defines as including significant habitat modifications. *Id.* § 1532(19); 50 C.F.R. § 17.3. Penalties for

knowingly violating section 9 of the ESA include both civil and criminal penalties. 16 U.S.C. § 1540(a)(1), (b)(1).

55. The bull trout informal consultation assumed there would be no take of the species under assumed conditions of the Sale. However, the informal consultation did not result in a permit for the take of bull trout. Accordingly, any take of bull trout, including significant habitat modifications of streams, potentially would subject Hoh River to civil and criminal liability.

56. As the provisions of the Sale contract make clear, ESA compliance is a major concern for both parties in federal timber sales. For example, the Sale contract requires Hoh River "to conduct its operations under this contract and other related business activities in compliance with Federal, State, and local statutes * * *" (CT6.0). Failure to do so would put Hoh River in breach (CT9.3), and the government cannot force a contractor to perform when the contractor has a good faith belief that doing so would violate federal law and be a breach of the contract.

57. In addition, the Sale contract provides the USFS significant protections against ESA liability through its ability to interrupt or delay operations to "prevent serious environmental degradation or resource damage" (CT6.01), to terminate the contract for those same reasons (CT8.0), and to settle the contract specifically in response to ESA concerns (CT9.52).

58. The defendant cannot on one hand provide significant protections for itself to avoid ESA liability, and on the other hand not respond to the contractor's good faith belief that performance of its duties under the contract would violate the ESA. Doing so violates the duty of good faith and fair dealing implied in all contracts.

## COUNT TWO

**Expiration of Contact -**
**Excuse of Performance**

59. Under 16 USCA § 472a, commercial timber sale contracts cannot exceed ten years. This statutory limit is implemented through rulemaking in the form of 36 CFR § 223.31 which provides:

> "Sale contracts shall not exceed 10 years in duration, unless there is a finding by the Chief, Forest Service, that better utilization of the various forest resources (consistent with the provisions of the Multiple Use0Sustained Yield Act of 1960) will result."

60. Additionally, while the Service's regulations permits "adjustment" of the stated contract term, the regulations says nothing at all about allowing "adjustment" beyond 10 years.

61. Here, the Sale was awarded June 14, 1993 with a scheduled termination date of March 31, 1998. Through a Market-Related Contract Adjustment, the term subsequently was adjusted to October 31, 2002, with the termination date remaining March 31, 2002. On July 24, 2001, the Gifford Pinchot granted another adjustment, this time based upon delays occurring during the 2000 operating season and also under BT8.21 adjusted the termination date to September 26, 2004. The second adjustment moved the termination date beyond 10 years.

62. None of these adjustments were based upon "a finding by the Chief: as required by 36 CFR § 223.31. 36 CRF § 223.46 providing for "adjustments" contains no declaration of authority whatsoever to "adjust" a term beyond 10 years.

63. The Forest Service Manual ("FSM") similarly provides that "Contract term *extension* must not result in a total length exceeding 10 years," (Emphasis added). FSM 2453.12a. The FSM then goes on, however, to provide that "Contract term *adjustment* may result in a contract's total length exceeding 10 years." (Emphasis added). FSM 2453.11(2).

64. The policies which appear in the FSM are not created through the notice and comment rulemaking process mandated by the Administrative Procedures Act, 5 USC § 551 et seq. Consequently, the FSM policies are not entitled to the force of law.

65. The express and unambiguous terms of the governing statute 16 USCA § 472a, draw no distinction between "adjustments" and "extensions," with regard to the 10-year limit. Subject only to the express grant of authority to the Chief to allow a longer term for "better utilization of the various forest resources," the statute unambiguously provides that "sales contracts shall be for a period not to exceed ten years." 16 USCA § 472a.

66. The USFS lacks under 16 USC § 472a lawful authority to authorize through the FSM a sales term longer than 10 years, whether via an "adjustment" or under some other label. As a result, the Sale expired June 14, 2003.

67. Contract BT9.4 states that a purchaser may face potential liability for failure to cut designated timber or portions of the sale area by the Termination Date.

68. Here, however, FWS (i) waived by its actions any right to claim breach prior to the end of year ten and (ii) after year ten, expiration of the contract ten year term extinguished any and all duties of performance between the parties.

**PRAYER**

Under either Count One or Count Two or both, the Court should

1. Declare Hoh River not to be in breach.

2. Enter a judgment in favor of Hoh River awarding no damages to the United States.

3. Award such other relief as the court deems appropriate.

STOEL RIVES LLP

Charles F. Adams

Charles F. Adams
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Counsel of Record for
Hoh River Timber Company

Of Counsel:

Louis A. Ferreira
Charles F. Adams
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Dated: May 22, 2006

S. DEPARTMENT OF AGRICULTURE -
FOREST SERVICE
TIMBER SALE CONTRACT
cable to Sales to be Measured Before Felling)

NAME OF PURCHASER

HOH RIVER TIMBER, INC.

7-30-05
~~09-16-04~~
~~03-01-03~~

| . FOREST | RANGER DISTRICT | REGION | CONTRACT NO. | |
|---|---|---|---|---|
| ifford Pinchot | Randle | Six | 078767 ~~10-31-2001~~ | |
| LE NAME | | SUBREGION | AWARD DATE | TERMINATION DATE |
| NSH-POLK M | | Douglas-fir | 6/14/93 | ~~MARCH 31, 1998~~ 7-26-200 |

e parties to this contract are The United States of America, acting through the Forest Service, United States Department of Agriculture, hereinafter called Forest Service, and HOH RIVER TIMBER, INC.
P.O. BOX 127, BEAVER, WASHINGTON 98305
a Corporation doing business as Hoh River Timber, Inc. under the Laws of the State of Washington
hereinafter called Purchaser.

See amend #1, #21, #?, #26, #27, #28

Forest Service having advertised a sale at which either (1) Purchaser, whose required bid deposit is now held by Forest Service as an initial deposit, was the successful bidder, or (2) no bids were received and Purchaser having subsequently offered at least the minimum advertised price and made an initial deposit in the same amount as the bid deposit specified in the sale advertisement; and the parties hereto desiring to record their agreement; now therefore,

n consideration of the premises and the promises hereinafter contained, unless provided otherwise herein, Forest Service agrees to sell and permit Purchaser to cut and remove and Purchaser agrees to purchase, cut and remove ncluded Timber.

his contract consists of three Divisions: AT - Specific Conditions, BT - Standard Provisions, and CT - Special Provisions, together with Sale Area Map, Drawings and specifications for developments (if any) and such attachments as may be provided for in Division CT. Specific Conditions are numbered and apply to the Part, Section, Subsection, or Item of the Standard Provisions, as indicated hereunder. Other conditions of this contract are stated in Division Special Provisions.

ITNESS WHEREOF, the parties hereto have executed this contract as of the award date.

UNITED STATES OF AMERICA

BY /s/ Harry L Cody

CONTRACTING OFFICER
(Title)

Two Witnesses:[3]

(Name)

(Address)

(Name)

(Address)

Hoh River Timber, Inc
(Purchaser)

By /s/ Dean Hurn

PRESIDENT
(Title)

Hoh River Timber Inc. P.O. Box 127, Beaver, Washington 98305
(Business Address)

I,[5] Elaine Hurn, certify that I am the Secretary of the corporation named as Purchaser herein; that Dean Hurn who signed this contract on behalf of Purchaser, was then President of said corporation; that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

/s/ Elaine Hurn

CORPORATE[6] SEAL

seal affixed

(OVER)

2400-6T, Page 101 (10/73)



EXHIBIT 1
PAGE 1

United States Department of Agriculture
Forest Service
Gifford Pinchot National Forest
360-891-5000
FAX 360-891-5045
10600 NE 51st Circle
Vancouver, WA 98682
TTY 360-891-5003

File Code: 2450

Date: February 24, 2006

Subject: NSH-Polk M Timber Sale, Contract No. 078767
Cowlitz Valley Ranger District

To: Hoh River Timber, Inc.
PO Box 127
Beaver, WA 98305-0127

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Gentleman:

CONTRACTING OFFICER'S FINDINGS AND DECISION

Your NSH-Polk M Timber Sale, Contract No. 078767, expired on July 30, 2005 in an uncompleted condition as described in CT9.4 Failure to Cut. Accordingly as Contracting Officer, I have calculated damages due the Government as outlined in the referenced provision and displayed in this decision.

1. PREFACE AND DIGEST

   a. Claim Identification Number 6-06-1

   b. Location: Region 6, Gifford Pinchot National Forest, Cowlitz Valley Ranger District.

   c. Timber Sale: NSH-Polk M
      Contract Date: June 14, 1993
      Contract Form: 2400-6T
      Original Term Date: March 31, 1998
      Adjusted Term Date: July 30, 2005
      Purchaser: Hoh River Timber, Inc.
      PO Box 127
      Beaver, WA 98305-0127

   d. Government's Claim:

      Government claims damages in the amount of $ 369,112.08 for the Purchaser's failure to complete, remove and pay for the NSH-Polk M Timber sale as required in the Timber Sale Contract. Volume not cut, removed and paid for is 1663.48 MBF.

| | |
|---|---|
| Total Damages Due*: | $811,046.31 |
| Predicted Bid Value**: | $385,043.62 |
| Remaining Damages Due: | $426,002.69 |
| Cash Available*: | $56,890.61 |
| Remaining Damages Due: | $369,112.08 |

*Total Damages Due is the contract value remaining at time of default based on rates at the end of the third quarter of 2005 multiplied by the remaining volume not cut and removed from the sale.

**Predicted Bid Value is the value developed as a result of a transactional evidence sale appraisal done at the time of default on the remaining volume not cut and removed.

*Cash available will be applied to damages due. Your performance bond will be retained in place until remaining damages are paid.

FINDINGS:

a. The NSH-Polk M Timber Sale was advertised on April 28,1993. A sale volume of 4,240 M board feet of Douglas-fir and Other species was advertised for $272.98 per MBF.

b. The NSH-Polk M bid opening, followed by oral bidding, was held on May 27, 1993.

c. Hoh River Timber, Inc. was the successful high bidder (from six qualified bidders) at a bid rate of $568.00 per MBF.

d. The NSH-Polk M Timber Sale was awarded to Hoh River Timber, Inc on June 14, 1993. Contract Form 2400-6T (10/73) was used.

e. January 26, 1994 - modification at purchaser's request to divide Payment Unit 1 into 1a and 1b and Payment Unit 13 into 13a and 13b.

f. May 16, 1994 - modification to add provision CT4.228 - Performance Bond as Security for Felled Timber.

g. November 14, 1994 - Road Completion date extended to 11/30/95 by letter.

h. February 24, 1995 & March 30, 1995 - modification of CT6.404# and CT2.35# (Option 1), revised for Payment Unit division.

i. April 18, 1995 - Replaced AT5A - Base Index by letter.

j. October 2, 1995 – Market Related Contract Term Addition (MRCTA) granted to extend sale term date to August 30, 1999 and revised CT4.264# - Periodic Payment Schedule.

k. August 24, 1995 - Purchaser Credit Limit increased by letter.

l. February 7, 1996 – contract modification to delete CT8.3 (1/86) and add CT8.3 (1/93). New provision increases limit by $20,000.

m. December 12, 1996 - Contract Term Adjustment (CTA) granted to July 26, 2000 and revised CT4.264# - Periodic Payment Schedule.

n. February 4, 1997 - Pen and Ink Change by letter to correct CT4.264# - Periodic Payment Schedule.

o. February 28, 1997 - modification to change Payment Unit 4 to Payment Unit 4M, revises Sale Area Map, reduces acres and volume quantity.

p. May 13, 1997 - Consent of Surety to extend Performance Bond.

q. January 13, 1998 - CTA granted to July 1, 2001 and revised CT4.264# - Periodic Payment Schedule.

r. July 6,1998, modification to delete CT8.212# (9/91 and add CT8.212# (5/98). New provision changes Index Name and Number.

s. November 13, 1998 - MRCTA granted to extend sale term date to July 1, 2002 and revised CT4.264# - Periodic Payment Schedule.

t. December 7, 1998 - Blanket Payment Bond replaced with Single Payment Bond.

u. April 20, 1999 - MRCTA granted to extend sale term date to October 31, 2002 and revised CT4.264# - Periodic Payment Schedule.

v. October 6, 1999 - modification to divide Payment unit 10 into 10a and 10b and Payment Unit 11 into 11a and 11b, separates tractor yarding portions.

w. February 11, 2000 - Contracting Officer modified the contract under CT6.25# to provide required protection for Northern Spotted Owls by adding an Operating Restriction to CT6.315#.

y. February 11, 2000 - Replaced AT5a Base Index by letter.

z. October 23, 2000 - Payment Bond canceled by Surety.

EXHIBIT 2
PAGE 3

aa. November 2, 2000 - Notification of termination of acceptable surety by letter, performance bond cancelled.

bb. December 5, 2000 – Notification by rider from surety that performance bond is replaced.

cc. December 6, 2000 - modification to add stream buffers and reduce volume quantities stated in AT2 and AT5c.

dd. January 5, 2001 - Payment Bond Replaced.

ee. January 31, 2001 - MRTCA granted to extend sale term date to March 1, 2003 and revised CT4.264# - Periodic Payment Schedule.

ff. February 6, 2001 - by letter, Hoh River Timber, Inc. requested that the Forest Service rescind the NSH-Polk M Timber Sale.

gg. March 15, 2001 - by letter, the Contracting Officer informed the Purchaser that the Forest Service found no merit in the Purchaser's request to rescind the NSH-Polk M Timber Sale.

hh. July 24, 2001 - CTA granted to September 16, 2004 and revised CT4.264# - Periodic Payment Schedule.

ii. July 15, 2003 - by letter, Hoh River Timber, Inc. requested that the NSH-Polk M Timber Sale be canceled.

jj. August 26, 2003 - by letter, the Contracting Officer informed the Purchaser that it was not in the Government's best interest to cancel the NSH-Polk M Timber Sale.

kk. November 12, 2003 - Hoh River Timber, Inc. made Periodic Payment in the amount of $59,791.26.

ll. June 28, 2004 – by letter, Hoh River Timber, Inc. informed the Forest Service that they were interviewing potential contractors to complete the NSH-Polk M Timber Sale.

mm. July 20, 2004 - by letter, the Contracting Officer informed Hoh River Timber, Inc. that additional Contract Term Adjustment was available if requested and that the Forest Service stood ready to assist Hoh River in completion of the sale.

nn. August, 2004 - by letter, Hoh River Timber, Inc. submitted an operating plan stating intent to complete the NSH-Polk M Timber Sale.

oo. September 8, 2004 - Contract Term Adjustment granted to July 30, 2005.

pp. April 29, 2005 - by letter, the Contracting Officer informed Hoh River Timber, Inc. of the pending expiration date for the NSH-Polk M Timber Sale and qualifying conditions for extension.

qq. July 14, 2005 - by letter, the Contracting Officer informed Hoh River Timber, Inc. about the pending expiration date, that there were no other qualifying reasons for extension and the NSH-Polk M Timber Sale would default in an uncompleted condition on July 30, 2005.

rr. July 30, 2005 - final Termination Date. NSH-Polk M Timber Sale expired in an uncompleted condition with volume remaining to remove.

ss. The NSH-Polk M Timber Sale Contract includes Provision CT9.4 - Failure to Cut (9/89)

DISCUSSION AND DECISION

It is my decision that damages are due the United States and the calculation of damages is correct and in accordance with Standard Provision CT9.4 - Failure to Cut. Therefore, Hoh River Timber, Inc., is liable to the United States in the amount of $369,112.08. Bill for Collection for remaining damages due is enclosed. Payment is due in 30 days of issue date of Bill for Collection.

CONCLUDING INFORMATION

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals. If you decide to make such appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, shall reference this decision, and identify this contract number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly to the U.S. Court of Federal Claims within 12 months of the date you receive this decision.

FREDRICK A. DORN
Contracting Officer

cc: Surety, R-6 Chris Anderson, Cowlitz Valley Ranger District

EXHIBIT 2
PAGE 5