**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

Hoh River Timber Company, a Washington corporation,

Plaintiff,

v.

United States of America, through the Department of Agriculture, United States Forest Service,

Defendant.

No. 06-418C

**AMENDED COMPLAINT**

COMES NOW the Plaintiff Hoh River Timber Company ("Hoh River"), through its undersigned counsel, and alleges as follows:

**JURISDICTION**

1. The Court has jurisdiction of this action under 28 USCA § 1491(a)(2) as an action brought on a decision of a contracting officer issued under Section 518 of the Contract Disputes Act, 41 USCA § 605. As set forth in paragraphs 4 and 45 below, the particular contracting officer's final decision was timely filed within one year of that decision, 41 USCA § 605.

**PARTIES**

2. Plaintiff Hoh River is a corporation organized and existing under the laws of the State of Washington.

3. Defendant United States, acting through the Department of Agriculture, United States Forest Service ("USFS"), solicited bids, and on June 14, 1993 entered into a contract with Hoh River for sale of timber within the Gifford Pinchot National Forest under the Polk M Contract (the "Contract"), No. 078767 (Exhibit 1, Excerpts of Contract). Defendant United States bears ultimate responsibility for the actions of the USFS under and in connection with the Contract.

**STATEMENT OF THE CASE**

4. This action arises out of the Contracting Officer's Findings and Decision dated February 24, 2006 declaring Hoh River liable to the United States for damages for failure to complete, remove, and pay for the NSH-Polk M Timber Sale ("Sale) as required in the Contract.

5. The Sale was advertised on April 28, 1993. A sale volume of 4,240 thousand board feet ("MBF") of Douglas-fir and other species was advertised for $272.98 per MBF. The bid opening, followed by oral bidding, was held on May 27, 1993. Hoh River was the successful high bidder at a bid rate of $568.00 per MBF. The Sale was awarded to Hoh River on June 14, 1993.

6. The Contract was modified on January 26, 1994 to divide Payment Unit 1 into 1a and 1b and Payment Unit 13 into 13a and 13b.

7. The Contract was modified on May 16, 1994 to add provision CT4.228, Performance Bond as Security for Felled Timber.

8. On November 14, 1994, the road completion date was extended to November 30, 1995.

9. The Contract was modified on February 24, 1995 and March 30, 1995 revising CT6.404# and CT2.35# (Option 1), for payment unit division, and revising the sale area map.

10. On April 18, 1995, the base index rate was adjusted to $468.57.

11. On October 2, 1995, the Market Related Contract Term Addition was granted to extend sale term date to August 30, 1999 and the periodic payment schedule was revised.

12. On February 7, 1996, the Contract was modified to delete CT8.3 (1/86) and add CT8.3 (1/93), and an increase in Hoh River's credit limit by $20,000.

13. On December 12, 1996, a Contract term adjustment was granted to July 26, 2000, and the periodic payment schedule was revised.

14. The periodic payment schedule was changed on February 4, 1997.

15. On February 28, 1997, the Contract was modified to change Payment Unit 4 to Payment Unit 4M, and Sales Area Map was again revised, reducing acres and volume quantity.

16. In March 1997, Hoh River ceased activity on the Sale, having removed 2,310 MBF. The volume remaining was 1,660 MBF.

17. On January 13, 1998, a Contract term adjustment was granted to July 1, 2001 and the periodic payment schedule was revised.

18. The Contract was modified on July 6, 1998 to replace CT8.212# to add a new provision that changed index name and number.

19. On November 13, 1998, a Market Related Contract Term Addition was granted to extend sale term date to July 1, 2002, and revised periodic payment schedule.

20. On April 20, 1999, the Sale term date was extended to October 31, 2002, and periodic payment schedule was revised.

21. On October 6, 1999, the Contract was modified to divide payment Unit 10 into 10a and 10b and payment Unit 11 into 11a and 11b, separating tractor yarding portions.

/////

**MODIFICATION OF CONTRACT FOR PROTECTION OF NORTHERN SPOTTED OWL**

22. On February 11, 2000, the Contract was modified to provide protection for the northern spotted owl by adding an operating restriction to CT6.315#. Operations Conditions were added to Payment Unit 19 specifying that all falling must occur between August 31 and February 29 after March 1, 1999, to prevent disruption to nesting spotted owls and direct impact to dispersing juveniles through cutting of spotted owl habitat. Operations Conditions were added to Payment Units 10, 11, 13B and 19 specifying that all noise making operations must occur between July 1 and February 29 after March 1, 1999 to prevent disruption to nesting spotted owls and direct impact to dispersing juveniles due to noise.

23. On February 11, 2000, the AT5a base index was replaced.

**MODIFICATION OF CONTRACT FOR STREAM BUFFERS TO COMPLY WITH ENDANGERED SPECIES ACT**

24. On December 6, 2000, the Contract was further modified to add stream buffers and reduce volume quantities stated in AT2 and AT5c.

25. On January 31, 2001, the Contract term was extended to March 1, 2003 and periodic payment schedule was revised.

**REQUEST FOR RESCISSION**

26. On February 6, 2001, Hoh River requested that the USFS rescind the NSH-Polk M Timber Sale because of its concern about complying with the Endangered Species Act and the potential for more delay and uncertainty with regard to the Sale.

27. On March 15, 2001, the USFS denied Hoh River’s request to rescind the NSH-Polk M Timber Sale.

/////

//////

**CONTRACT TERM ADJUSTED BEYOND 10 YEARS**

28. On July 24, 2001 the USFS adjusted the Contract term to September 16, 2004. The tenth anniversary of the June 14, 1993 timber sale was June 14, 2003, and September 16, 2004 was a date beyond ten years from the date of the award.

**REQUEST FOR CANCELLATION OF SALE**

29. On July 15, 2003 Hoh River requested that the USFS cancel the NSH-Polk M Timber Sale because of the restrictions placed on the Sale to protect species listed as threatened or endangered under the ESA, the deterioration of the Sale resulting in many unmarked snags or danger trees on the remaining units making the Sale non-compliant with OSHA regulations, the significant confusion over how the Sale is laid out and the need to have it evaluated and remarked for consistency and clarity, the fact that the 10-year anniversary of the Sale had passed, and concern that the Sale contains many evident pockets of root fungus affecting Douglas fir that likely are more widespread than when the NEPA analysis and prescription for the Sale were formulated.

30. On August 26, 2003, the contracting officer denied Hoh River's request to cancel the NSH-Polk M Timber Sale.

31. On November 12, 2003, Hoh River made a periodic payment in amount of $59,791.26.

32. On June 28, 2004, Hoh River informed the USFS that they were interviewing potential contractors to complete the Sale.

33. On July 20, 2004, the contracting officer informed Hoh River that an additional contract term adjustment was available if requested and that the USFS stood ready to assist Hoh River in completion of the sale.

34. In August 2004 Hoh River submitted an operating plan stating intent to complete the Sale.

35. On September 8, 2004, the USFS granted a Contract term adjustment to July 30, 2005.

36. On April 29, 2005, Contracting Officer Frederick Dorn ("CO Dorn") informed Hoh River of pending expiration date of NSH-Polk M Timber Sale and qualifying conditions for extension.

37. On June 29, 2005, Hoh River's legal counsel, Barbara Craig of Stoel Rives LLP, ("Attorney Craig") sent a letter to Valerie Black, Office of General Counsel, U.S. Department of Agriculture, advising Ms. Black that Hoh River could not proceed without re-initiation of consultation for the Sale under the Endangered Species Act (the "ESA") and requesting an extension of the sale termination date pending resolution of the issue.

38. On July 14, 2005, CO Dorn informed Hoh River about the pending expiration date stating that there were no other qualifying reasons for extension, and the sale would default in an uncompleted condition by July 30, 2005.

39. On July 19, 2005, attorney Craig sent a letter to Marc Whisler of the U.S. Fish & Wildlife Service ("FWS") requesting that the FWS reinitiate ESA section 7 consultation on the effects of the Sale on listed species.

40. On July 27, 2005, attorney Craig sent a letter to Linda Goodman, Regional Forester, Region 6 ("Regional Forester Goodman"), anticipating that the USFS would reinitiate consultation, and requesting that the USFS designate Hoh River as the USFS's non-federal representative in the ESA section 7 consultation.

/////

41. On July 28, 2005, Ken Berg, FWS, sent a letter to Claire Lavendel, Gifford Pinchot ("CP Supervisor Lavendel") Forest Supervisor, requesting that if the Sale has been changed so that it is not consistent with the conditions previously assumed, the USFS reinitiate consultation.

42. As of July 30, 2005, the Sale remained in an uncompleted condition with volume remaining.

43. On August 9, 2005, Regional Forester Goodman responded to attorney Craig's July 27, 2005 letter. Regional Forester Goodman opined that there were no actions on the part of the USFS preventing Hoh River from completing its obligations under the Contract. Regional Forester Goodman further declared that the Sale had now expired in an uncompleted condition and that the Contracting Officer would proceed with processing any damages due.

44. On August 11, 2005, CP Supervisor Lavendel sent a letter to FWS's Ken Berg indicating that the Forest Service has determined that re-initiation of consultation on the Sale was not required under the ESA.

45. On February 24, 2006, CO Dorn issued findings and a final decision (Exhibit 2) declaring Hoh River liable to the United States for damages for failure to complete, remove, and pay for the Sale as required in the Contract.

46. A Bill for Collection (Exhibit 3) was issued on February 24, 2006 to Hoh River for payment in the amount of $369,112.08.

47. On June 12, 2006, Attorney Craig sent a letter to Ms. Diane Hoobler, U.S. Department of Interior, Office of Solicitor, advising her that previous consultations under ESA had involved assumptions made by USFWS concerning the Sale and conditions imposed to avoid impacts to bull trout; most notably, the condition that streams in the Sale area would be

buffered and no new roads would be built to complete the Sale. Attorney Craig's letter advised that changes to the Sale layout required Hoh River to construct new roads, turnouts, and landings to complete the sale, and that at least one stream had not been buffered, and that therefore re-initiation of consultation for the Sale under the ESA was required to ensure that Hoh River was not in violation of the ESA. Hoh River requested that it be designated as the Forest Service's non-federal representative.

**COUNT I**

**(Endangered Species Act)**

48. Plaintiff incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

49. At the time the Sale was listed Endangered Species Act ("ESA") listed species were not a concern, Contract CT 6.24.

50. Since being awarded to Hoh River in 1993, the Polk M sale has, however, been the subject of Endangered Special Act (the "ESA") Section 7 consultations between the Forest Service and the FWS. August 2000 letter from the Dept. of Interior to Ms. Lavendel, Forest Supervisor Gifford Pinchot National Forest (re- initiation on original consultation 1991).

51. The Forest Service consulted with FWS concerning the effects of the sale on northern spotted owl in July 1991 and more recently, bull trout in August 2000. The bull trout consultation was a reinitiation of an earlier formal consultation for the 318 Timber Sale Program (318 Timber Sales Biological Opinion (FWS 1-7-91 - F-0031) to consider the effect of the sale on the subsequently listed bull trout.

52. The bull trout consultation concluded informally with a "not likely to adversely affect" determination based on certain assumptions made by the FWS concerning the Sale, and

certain conditions the FWS imposed to avoid impacts to bull trout. Most notable was a condition that streams in the Sale area would be buffered and no new roads would be built to complete the Sale.

53. However, changes to the Sale layout since it was first awarded would require Hoh River to violate the FWS' conditions in the consultation under the ESA.

54. Although the Forest Service modified the sale area by retagging and excluding portions of streams to conform to FWS guidelines, the Forest Service did not buffer the streams affected in their entirety. One of the streams which was not entirely buffered by the Forest Service flows within 40 feet of the tractor logging area and within 140 feet of the temporary road that was to be constructed under the contract. Logging across this unbuffered stream as planned by the Forest Service exposes Hoh River to liability for violation of FWS guidelines.

55. Completing the sale circumstances consequently would not be consistent with the conditions on which the findings of the bull trout informal consultation were based.

56. The Sale, as modified, violates the conditions on which the FWS based its findings in the prior bull trout informal consultation. Proceeding with the Sale in violation of the ESA would constitute a breach of the Sale contract (CT9.3).

57. Proceeding with the Sale also would subject Hoh River to potential liability under section 9 of the ESA. 16 USC § 1538. Section 9 prohibits the "take" of a listed species without a permit. *Id*. The term "take" includes to "harm" the species, which the FWS defines as including significant habitat modifications. *Id*. § 1532(19); 50 C.F.R. § 17.3. Penalties for knowingly violating section 9 of the ESA include both civil and criminal penalties. 16 U.S.C. § 1540(a)(1), (b)(1).

/////

58. The bull trout informal consultation assumed there would be no take of the species under assumed conditions of the Sale. However, the informal consultation did not result in a permit for the take of bull trout. Accordingly, any take of bull trout, including significant habitat modifications of streams, potentially would subject Hoh River to civil and criminal liability.

59. As the provisions of the Sale contract make clear, ESA compliance is a major concern for both parties in federal timber sales. For example, the Sale contract requires Hoh River "to conduct its operations under this contract and other related business activities in compliance with Federal, State, and local statutes * * *" (CT6.0). Failure to do so would put Hoh River in breach (CT9.3), and the government cannot force a contractor to perform when the contractor has a good faith belief that doing so would violate federal law and be a breach of the contract.

60. In addition, the Sale contract provides the USFS significant protections against ESA liability through its ability to interrupt or delay operations to "prevent serious environmental degradation or resource damage" (CT6.01), to terminate the contract for those same reasons (CT8.0), and to settle the contract specifically in response to ESA concerns (CT9.52).

61. The defendant cannot on one hand provide significant protections for itself to avoid ESA liability, and on the other hand not respond to the contractor's good faith belief that performance of its duties under the contract would violate the ESA. Doing so violates the duty of good faith and fair dealing implied in all contracts.

/////

/////

**COUNT TWO**

**Expiration of Contact -**
**Excuse of Performance**

62. Under 16 USCA § 472a, commercial timber sale contracts cannot exceed ten years. This statutory limit is implemented through rulemaking in the form of 36 CFR § 223.31 which provides:

> "Sale contracts shall not exceed 10 years in duration, unless there is a finding by the Chief, Forest Service, that better utilization of the various forest resources (consistent with the provisions of the Multiple Use0Sustained Yield Act of 1960) will result."

63. Additionally, while the Service's regulations permits "adjustment" of the stated contract term, the regulations says nothing at all about allowing "adjustment" beyond 10 years.

64. Here, the Sale was awarded June 14, 1993 with a scheduled termination date of March 31, 1998. Through a Market-Related Contract Adjustment, the term subsequently was adjusted to October 31, 2002, with the termination date remaining March 31, 2002. On July 24, 2001, the Gifford Pinchot granted another adjustment, this time based upon delays occurring during the 2000 operating season and also under BT8.21 adjusted the termination date to September 26, 2004. The second adjustment moved the termination date beyond 10 years.

65. None of these adjustments were based upon "a finding by the Chief: as required by 36 CFR § 223.31. 36 CRF § 223.46 providing for "adjustments" contains no declaration of authority whatsoever to "adjust" a term beyond 10 years.

66. The Forest Service Manual ("FSM") similarly provides that "Contract term *extension* must not result in a total length exceeding 10 years," (Emphasis added.) FSM 2453.12a. The FSM then goes on, however, to provide that "Contract term *adjustment* may result in a contract's total length exceeding 10 years." (Emphasis added.) FSM 2453.11(2).

67. The policies which appear in the FSM are not created through the notice and comment rulemaking process mandated by the Administrative Procedures Act, 5 USC § 551 et seq. Consequently, the FSM policies are not entitled to the force of law.

68. The express and unambiguous terms of the governing statute 16 USCA § 472a, draw no distinction between "adjustments" and "extensions," with regard to the 10-year limit. Subject only to the express grant of authority to the Chief to allow a longer term for "better utilization of the various forest resources," the statute unambiguously provides that "sales contracts shall be for a period not to exceed ten years." 16 USCA § 472a.

69. The USFS lacks under 16 USC § 472a lawful authority to authorize through the FSM a sales term longer than 10 years, whether via an "adjustment" or under some other label. As a result, the Sale expired June 14, 2003.

70. Contract BT9.4 states that a purchaser may face potential liability for failure to cut designated timber or portions of the sale area by the Termination Date.

71. Here, however, FWS (i) waived by its actions any right to claim breach prior to the end of year ten and (ii) after year ten, expiration of the contract ten year term extinguished any and all duties of performance between the parties.

**COUNT III**

**(Cardinal Change)**

72. Plaintiff incorporates paragraphs 1 through 71 of this Complaint as if fully stated herein.

73. As alleged previously, changes to the Sale layout since it was first awarded, which do not adequately protect the streams on the Sale location and which require Hoh River to construct new roads, turnouts, and landings to complete the sale, would require Hoh River to

violate the FWS' conditions in the consultation under the ESA. Proceeding with the Sale in violation of the ESA would constitute a breach of the Sale contract (CT9.3).

74. Changes to the Sale layout also do not adequately plan for rock surfacing which will be required for traction on roads constructed in order to complete the Sale, nor is it clear that the FWS department is aware of or approves of the temporary spurs and landings that must be constructed under the sale. Consequently, completion of the sale may expose Hoh River to liability if it constructs temporary spurs and landings which the FWS has not approved.

75. Additionally, the Contract modifications made for the protection of the northern spotted owl require that all falling occur between August 31 and February 29. Because of the 2800' elevation of the sale area, it is impractical to plan logging activities for December, January, or February due to snow. This means that all logging would be restricted to a 4-month time period when fire weather will be at its highest (August and September) and later when it will surely rain or snow (October and November).

76. The above-mentioned changes to the Sale layout constitute a change of the contract which is outside of the contract's scope, and which consists of a variance so substantial from the original contract, that it constitutes a "Cardinal Change."

77. The Cardinal Change(s) alleged constitute a breach of the contract, excusing Hoh River's duties of further performance (if any) under the Contract.

**COUNT IV**

**(Constructive Change)**

78. Plaintiff incorporates paragraphs 1 through 77 of this Complaint as if fully stated herein.

/////

79. In the alternative to Plaintiff's Cardinal Change claim, plaintiff alleges that the above-described alterations of the Sale constitute a Constructive Change.

80. Plaintiff has performed or will be required to perform work beyond the Sale requirements, due to the requirements imposed by the government as a result of the changes in the Sale layout.

81. The government requires the plaintiff to perform under the new conditions.

82. Plaintiff is entitled to an equitable adjustment of the Sale as a result of the Constructive Change, offsetting the amount (if any) of damages otherwise owed for not completing harvest of timber.

**PRAYER**

Under each or all of Counts I, II or III, the Court should

1. Declare Hoh River not to be in breach.

2. Enter a judgment in favor of Hoh River awarding no damages to the United States.

In the alternative, the Court shall under Count IV

3. Offset against the amount (if any) due for failure to cut by an equitable adjustment which reflects the cost impacts of the government's Constructive Change.

/////

/////

/////

/////

/////

/////

/////

4. On each and all of Counts I through IV, award such other relief as the court deems appropriate.

STOEL RIVES LLP

/s/______________________________
Louis A. Ferreira
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Counsel of Record for
Hoh River Timber Company

<u>Of Counsel</u>:

Charles F. Adams
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Dated: June 29, 2006